UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATASHA PHILLIPS,<br><br>         Plaintiff,<br><br>    -against-<br><br>180 BKLYN LIVINGSTON, LLC and THOR 180 LIVINGSTON LLC,<br><br>         Defendants. | **MEMORANDUM**<br>**DECISION AND ORDER**<br><br>17 Civ. 325 (BMC) |

**COGAN**, District Judge.

  Plaintiff Natasha Phillips, a woman who uses forearm crutches, filed this action under the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), in addition to alleging common law negligence, claiming lack of accessibility at a Dallas BBQ establishment in Brooklyn, New York. Plaintiff has sued the lessee of the premises, 180 Bklyn Livingston, and the landlord, Thor 180 Livingston, alleging, among other things, that the sidewalk entrance, restrooms, and take-out counter are inaccessible to her.[1] She seeks an injunction to compel defendants to make the restaurant accessible to her and attorneys' fees and costs under the ADA, in addition to monetary damages under state law for emotional distress.

  What is unique here is that defendants do not dispute the potential accessibility issues presented by the sidewalk, restroom, and counter, and they have begun making the modifications to remedy these issues. But that is not enough for plaintiff. When defendants approached plaintiff's counsel about a settlement, which included the remediation of the three issues,

---

[1] Plaintiff actually identifies a litany of issues in the amended complaint, but almost all appear to be boilerplate issues. Further, when defendants communicated with plaintiff about the issues listed in the amended complaint, plaintiff's counsel advised that the main issues were the sidewalk, restroom, and counter.

plaintiff's counsel stated in sum and substance that he would have to recommend to his client a very large amount of dollars to settle this action. Such a demand is inconsistent with the purpose of the ADA – the statute does not provide for compensatory or punitive damages. Therefore, through this statement, plaintiff's goal was made apparent to the Court: This case is not really about redressing accessibility issues for herself and other disabled members of the public, as Congress intended in passing the ADA; rather, it is about plaintiff's attempt to extract a large cash settlement from defendants.

During the initial status conference in this matter, the Court issued an Order to Show Cause why it should not decline supplemental jurisdiction over the state causes of action, which are the only ones that permit monetary damages, when it appears that defendants are fixing the allegedly inaccessible issues, thus vitiating the ADA's jurisdictional hook. Defendants responded to the Court's Order, while plaintiff failed to respond to both the Court's Order and defendants' filing. For the reasons that follow, the Court declines supplemental jurisdiction over the NYSHRL, NYCHRL, and negligence claims, and those claims are dismissed.

**DISCUSSION**

The goal of the ADA is to remedy discrimination against individuals with disabilities. To that end, Title III of the ADA, requires the removal of structural barriers in existing public accommodations "where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Where removal of the barrier is not readily achievable, the facility must provide access "through alternative methods if such methods are readily achievable." 42 U.S.C. § 121812(b)(2)(A)(v).

To enforce Title III, the ADA contains both a private right of action, see 42 U.S.C. § 12188(a), and a public right of action for the Attorney General, see 42 U.S.C. § 12188(b). And although the Attorney General may seek monetary damages on behalf of an aggrieved party, see 42 U.S.C. § 12188(b)(2)(B), the only remedies available under the private right of action are

injunctive relief and the recovery of attorneys' fees and costs, see 42 U.S.C. § 12188(a)(1); 42 U.S.C. § 2000a–3(a). Congress distinguished between the remedies available for public enforcement and private enforcement, thus clearly manifesting its intent to prevent private plaintiffs from recovering money damages under the ADA. See Am. Bus. Ass'n v. Slater, 231 F.3d 1, 5 (D.C. Cir. 2000) ("By specifying the circumstances under which monetary relief will be available, Congress evinced its intent that damages would be available in no others.").

To sidestep the intent of the statute in not creating a private right of action for compensatory damages, intrepid plaintiffs' firms, like the one representing Phillips, file suit under the ADA and the state and city analogs, the NYSHRL and NYCHRL, which do permit money damages. Usually, this sort of suit is enough to compel settlement from a defendant who would rather avoid costly litigation and who, through settlement, seeks to avoid the costly work associated with remediating the structural barriers. As a result, this Court has had to sit idly by as plaintiffs' attorneys have exploited the ADA for financial gain, rather than to forward the nobler cause of accessibility for disabled Americans.

Here, although defendants wanted to also settle quickly, they also wanted to remedy the accessibility issues because they value their customers. So defendants hired a contractor and are working towards remedying the barrier issues within six months. This is an admirable position that does not interest plaintiff as there is no large settlement attached to the remediation. Because the ADA does not provide for money damages, the Court is therefore left to consider whether it should exercise supplemental jurisdiction over the NYCHRL, NYSHRL, and negligence claims.

"[A] federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus

of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988); 28 U.S.C. § 1367(a). Notwithstanding, the supplemental jurisdiction statute also provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, . . . or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(2), (4). Here, although the claims all originate from the same common nucleus of operative facts, both subsections (c)(2) and (c)(4) militate in favor of declining supplemental jurisdiction.

Section 1367(c)(2) is meant to shield federal courts from unrelated state claims that necessitate additional discovery or different legal analyses, such that the state claims overwhelm and swallow the relatively minor federal claims. This is to prevent federal courts from sitting as essentially state court judges and deciding intricate issues of state law. Thus, federal courts routinely decline to exercise supplemental jurisdiction where state law claims "are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims." OccuNomix Int'l LLC v. N. Ocean Ventures, Inc., No. 03 CIV. 6047, 2003 WL 22240660, at *1 (S.D.N.Y. Sept. 30, 2003) (quoting Diven v. Amalgamated Transit Union Int'l & Local 689, 38 F.3d 598, 601 (D.C. Cir. 1994).

Here, the state claims would consume the federal ADA claims. First, as a practical matter, the ADA does not provide for a jury trial, whereas the state and city claims do. The preparation of a case for a jury trial requires far more resources than a trial being put to a judge alone. Second and more importantly, plaintiff's claims include claims for negligence under state law and her request for compensatory damages under the NYSHRL and NYCHRL include

claims for emotional distress. A claim for negligence and an issue on emotional damages would necessarily require an entirely separate and substantial line of discovery. See N.Y. City Transit Auth. v. State Div. of Human Rights, 78 N.Y.2d 207, 215, 577 N.E.2d 40 (1991) ("Throughout tort law, psychic injury – by nature essentially subjective – has prompted difficult questions of proof, both as to establishing the genuineness of any injury and as to fixing its dollars-and-cents valuation. Such questions have particular pertinence to [HRL] cases, where mental suffering is not only compensable, but also a frequent – sometimes sole – consequence of unlawful discriminatory conduct." (internal citations omitted)).

Therefore, rather than adjudicate this case consistent with Congress's intent to increase accessibility, this Court would be left to sit as a state court judge, ferreting out the contours of plaintiff's alleged emotional distress. This cannot be what Congress had in mind when it passed the ADA. This conclusion about Congress's intent dovetails with the analysis under § 1367(c)(4), which gives federal courts discretion to decline supplemental jurisdiction where there is a compelling reason to decline jurisdiction. Here, there is such a compelling reason.

Courts across the country have long recognized the "cottage industry" of ADA lawyers who bring a large number of ADA suits to extract attorneys' fees, which is authorized under the ADA. Rodriguez v. Investco, LLC, 305 F.Supp.2d 1278, 1280-82 (M.D. Fla. 2004); see also Shariff v. Beach 90th St. Realty Corp., No. 11 Civ. 2551, 2013 WL 6835157 (E.D.N.Y. Dec. 20, 2013) ("Courts throughout the country have raised concerns about this type of serial ADA litigation to take advantage of the statute's attorney's fees provision."). And we are now seeing the unfortunate next step in the degradation of the ADA.

This is not a case to vindicate a disabled person's rights; it is a case brought to extract a money settlement from a restaurant in Brooklyn, with plaintiff exploiting the ADA's

5

jurisdictional hook to achieve that goal. That is simply not what Congress intended. "[T]he ADA is a trailblazing civil rights law that changed individual lives and national stereotypes about people with disabilities," and plaintiffs like Phillips "mock the statute's mission by engaging in serial ADA litigation to take advantage of" the extraction of money. Cankat v. 41st Ave. Rest. Corp., No. 15CV4963, 2016 WL 7217638, at *5 (E.D.N.Y. Dec. 12, 2016); accord Taylor v. 312 Grand St. LLC, No. 15 CIV. 5410, 2016 WL 1122027, at *5 (E.D.N.Y. Mar. 22, 2016) ("[T]his case has little or nothing to do with Congress's purpose in enacting the ADA. It is, rather, an exercise in shooting ducks in a barrel – marginal businesses that barely have enough funds to defend themselves – in order to generate a small amount of attorneys' fees.").

Thus, the compelling reason to decline supplemental jurisdiction as presented by this case is the prevention of the misuse and exploitation of the ADA in a way that directly contravenes Congressional intent and the remedial nature of the ADA. Congress consciously chose not to permit money damages in ADA actions such as this one, and tacking on state claims that permit damages is effectively creating an end-run on the ADA's purpose and Congress's intent. Whether a state or city legislative body wants to make such damages available to its citizens is the legislative body's prerogative, and litigants seeking those damages belong in state court. Adding ADA claims to invoke federal jurisdiction is akin to an entity collusively creating diversity jurisdiction to achieve federal review of state law concerns to achieve state law remedies, and federal courts should be vigilantly scrutinizing such attempts.

This Court refuses to allow this plaintiff and her counsel to pursue state money damages through an exercise of federal jurisdiction, particularly where defendants are taking all necessary steps to make their establishment accessible, in line with the spirit of the ADA.

## CONCLUSION

Accordingly, the second, third, fourth, and fifth causes of action in the amended complaint are dismissed without prejudice to their pursuit in state court.

Further, by May 22, 2017, plaintiff is to submit to the Court a list of all of the genuine accessibility issues found at the restaurant – a boilerplate recitation of the generic issues outlined in the amended complaint will not be sufficient.  By May 29, 2017, defendants will respond with a letter indicating whether they dispute the issues or whether they are fixing the problems.  With the scope narrowed to only those alleged barriers in dispute, the Court will then order a discovery schedule that proportionally reflects the needs of the case.  See Fed. R. Civ. P. 26(b)(1).

**SO ORDERED.**

|  |  |
|---|---|
|  | U.S.D.J. |

Dated:	May 16, 2017
	Brooklyn, New York